# United States Court of Appeals for the Federal Circuit

---

**AATRIX SOFTWARE, INC.,**
*Plaintiff-Appellant*

**v.**

**GREEN SHADES SOFTWARE, INC.,**
*Defendant-Appellee*

---

2017-1452

---

Appeal from the United States District Court for the Middle District of Florida in No. 3:15-cv-00164-HES-MCR, Senior Judge Harvey E. Schlesinger.

---

Decided: February 14, 2018

---

JOHN BENTLEY LUNSETH, II, Briggs & Morgan, PA, Minneapolis, MN, argued for plaintiff-appellant.

JOSEPH W. BAIN, Shutts & Bowen LLP, West Palm Beach, FL, argued for defendant-appellee. Also represented by HAROLD TIMOTHY GILLIS, Jacksonville, FL.

---

Before MOORE, REYNA, and TARANTO, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* MOORE.

Opinion concurring-in-part, dissenting-in-part filed by *Circuit Judge* REYNA.

MOORE, *Circuit Judge*.

Aatrix Software, Inc. ("Aatrix") appeals the United States District Court for the Middle District of Florida's dismissal under Rule 12(b)(6), in which the district court held claims 1, 2, and 22 of U.S. Patent No. 7,171,615 ("'615 patent") and claims 1, 13, and 17 of U.S. Patent No. 8,984,393 ("'393 patent") invalid as directed to ineligible subject matter under 35 U.S.C. § 101. Aatrix also appeals the district court's denial of its motion for leave to file a second amended complaint. We vacate the district court's grant of the motion to dismiss, reverse its denial of Aatrix's motion for leave to file a second amended complaint, and remand for further proceedings.

BACKGROUND

The '615 and the '393 patents have essentially the same specification and are directed to systems and methods for designing, creating, and importing data into a viewable form on a computer so that a user can manipulate the form data and create viewable forms and reports. '615 patent at Abstract. The preferred embodiment in the specification describes a data processing system, which has three main components: a form file, a data file, and a viewer. *Id.* at 3:4–31, Fig. 1. The form file is created using in-house form development tools and is designed to model the physical characteristics of an existing form, including the calculations and rule conditions required to fill in the form. *Id.* at 3:5–14. The data file, referred to as the Aatrix Universal File ("AUF"), allows data from third-party applications to be "seamlessly imported" into the form file program to populate the form fields. *Id.* at 3:14–22. The viewer generates a report by merging the data in the AUF file with the fields in the form file, performing

calculations on the data, and allowing the user to review and change the field values. *Id.* at 3:24–31. Claim 1 of the '615 patent is representative (emphases added):

1. *A data processing system* for designing, creating, and importing data into, a viewable form viewable by the user of the data processing system, comprising:

(a) a form file that models the physical representation of an original paper form and establishes the calculations and rule conditions required to fill in the viewable form;

(b) a form file creation program that imports a background image from an original form, allows a user to adjust and test-print the background image and compare the alignment of the original form to the background test-print, and creates the form file;

(c) a *data file* containing data from a user application for populating the viewable form; and

(d) a form viewer program operating on the form file and the data file, to perform calculations, allow the user of the data processing system to review and change the data, and create viewable forms and reports.

Aatrix sued Green Shades Software, Inc. ("Green Shades") for infringement of the '615 and '393 patents. Green Shades moved to dismiss the complaint under Rule 12(b)(6). It argued all claims in the asserted patents were ineligible under § 101. Aatrix argued the motion should be denied "to permit claim construction to go forward and for the [district court] to acquaint itself with the actual

inventions." J.A. 198; *see also* J.A. 5, 204. Aatrix also filed declarations discussing the claimed invention, which the district court did not consider in its analysis.

The district court granted Green Shades' motion and held every claim ineligible under § 101. J.A. 33 (holding "the '615 and '393 Patents to be drawn to ineligible subject matter"). Though not argued by the parties, the district court concluded claim 1 is not directed to any tangible embodiment and therefore not directed to eligible subject matter under § 101. The district court applied the *Alice/Mayo* two-step analysis to the remaining claims at issue. The court held that '615 patent claim 2 is directed to the abstract idea of "collecting, organizing, and performing calculations on data to fill out forms: a fundamental human activity that can be performed using a pen and paper." J.A. 23. It found that the claim elements do not supply an inventive concept. It concluded '615 patent claim 22 and '393 patent claims 1, 13, and 17 are substantively the same as '615 patent claim 2 and similarly directed to abstract ideas without inventive concepts.

Aatrix moved to modify and vacate the judgment, for reconsideration, and for leave to amend the complaint. It sought reconsideration of the district court's tangible embodiment analysis and leave to file a second amended complaint that it argued supplied additional allegations and evidence that would have precluded a dismissal under § 101 at the Rule 12(b)(6) stage. The district court denied these motions, stating that "[u]pon consideration of the filings and the relevant case law, the [district court] sees no reason to reconsider its prior determination. Accordingly, [Aatrix's] motions will be denied." J.A. 34.

Aatrix timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a).

DISCUSSION

I.

"We review a district court's dismissal for failure to state a claim under the law of the regional circuit." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014). The Eleventh Circuit reviews the grant of Rule 12(b)(6) motions de novo, accepting as true the complaint's factual allegations and construing them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

We have held that patent eligibility can be determined at the Rule 12(b)(6) stage. *See, e.g., Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016); *Content Extraction*, 776 F.3d at 1346, 1351. This is true only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law. Indeed, we have explained that "plausible factual allegations may preclude dismissing a case under § 101 where, for example, 'nothing on th[e] record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6).'" *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)). If there are claim construction disputes at the Rule 12(b)(6) stage, we have held that either the court must proceed by adopting the non-moving party's constructions, *BASCOM*, 827 F.3d at 1352; *Content Extraction*, 776 F.3d at 1349, or the court must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction. *Genetic Techs.,* 818 F.3d at 1373.

This is not a case where patent ineligibility was properly adjudicated with finality at the Rule 12(b)(6)

stage.  The district court erred to the extent it determined that claim 1 of the '615 patent is ineligible because it is not directed to a tangible embodiment.  The district court granted this Rule 12(b)(6) motion without claim construction.  We have some doubt about the propriety of doing so in this case, but need not reach that issue because it did err when it denied leave to amend without claim construction and in the face of factual allegations, spelled out in the proposed second amended complaint, that, if accepted as true, establish that the claimed combination contains inventive components and improves the workings of the computer.

As a preliminary matter, the district court erred to the extent it held that claim 1 of the '615 patent is ineligible solely because it is directed to an intangible embodiment.  We have held that claims to pure data and claims to transitory signals embedded with data are directed to ineligible subject matter under § 101.  *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1348–50 (Fed. Cir. 2014); *In re Nuijten*, 500 F.3d 1346, 1353–57 (Fed. Cir. 2007).  But the rationale of those decisions—failure of the claimed matter to come within any of the four statutory categories: process, machine, manufacture, composition of matter—does not apply here.  It remains true after *Alice Corp. Pty. v. CLS Bank International*, 134 S. Ct. 2347 (2014), that "[a] § 101 analysis begins by identifying whether an invention fits within one of the four statutorily provided categories of patent-eligible subject matter."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713–14 (Fed. Cir. 2014) (post-*Alice*); *Digitech*, 758 F.3d at 1348–50 (post-*Alice*).  Claim 1 of the '615 patent meets that requirement.  Like many claims that focus on software innovations, it is a system claim.  It claims a data processing system which clearly requires a

computer operating software, a means for viewing and changing data, and a means for viewing forms and reports. This is very much a tangible system.[1] The district court erred in holding claim 1 ineligible because it was directed to intangible matter and should have instead performed an *Alice/Mayo* analysis of claim 1.

The district court did perform an *Alice/Mayo* analysis on the remaining claims and dismissed pursuant to Rule 12(b)(6), concluding that the claims are ineligible. The subsequent refusal to permit an amended complaint was erroneous because at that stage there certainly were allegations of fact that, if Aatrix's position were accepted, would preclude the dismissal.

The district court denied, without explanation, Aatrix's motion to amend its complaint. The Eleventh Circuit reviews a district court's denial of leave to amend for abuse of discretion. *Mann v. Palmer*, 713 F.3d 1306, 1316 (11th Cir. 2013). A district court should freely give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014). A district court may

---

[1] The district court recognized that claims drawn to a computer system are not intangible elsewhere in its analysis. In assessing dependent claim 2 of the '615 patent, the district court noted that it is directed to a tangible embodiment because it adds a client computer and server computer limitation to the data processing system of claim 1. It then explained that claim 2 "describes the *structural components* and functional limitations of said components of a data processing system (i.e., software program) on generic computers." J.A. 22 (emphasis added); *see also* J.A. 24. It failed, however, to appreciate that claim 1 is similarly directed to a data processing system.

deny a motion to amend on numerous grounds such as "undue delay, undue prejudice to the defendants, and futility of the amendment." *Mann*, 713 F.3d at 1316; *see also Perez*, 774 F.3d at 1340–41 (listing other factors). The Eleventh Circuit reviews de novo a district court's denial of leave to amend for futility. *Mann*, 713 F.3d at 1316. A justification for denying leave to amend may be declared or apparent from the record. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In this case, the district court denied Aatrix's motions stating in full that "[u]pon consideration of the filings and the relevant case law, the Court sees no reason to reconsider its prior determination." J.A. 34. The district court gave no reason for its denial of Aatrix's motion to amend, and this is not a case where the record contains "ample and obvious grounds for denying leave to amend." *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1154 (5th Cir. 1981).[2] Indeed, the only argument Green Shades makes on appeal is that the amendment would be futile because the claims "at issue are invalid on their face and a more carefully drafted complaint would do nothing to alter" their validity. Appellee's Br. 4, 12. We do not agree.

The proposed second amended complaint contains allegations that, taken as true, would directly affect the district court's patent eligibility analysis. These allegations at a minimum raise factual disputes underlying the § 101 analysis, such as whether the claim term "data file" constitutes an inventive concept, alone or in combination with other elements, sufficient to survive an *Alice/Mayo*

---

[2]    The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

analysis at the Rule 12(b)(6) stage. *Alice/Mayo* step two requires that we consider whether the claims contain "an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72, 79 (2012)). We have held that patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6). *See, e.g.*, *BASCOM*, 827 F.3d at 1352 (so holding after analysis of allegations). Here, allowing Aatrix to file the proposed amended complaint, which alleges facts directed to the inventive concepts in its claimed invention, would not be futile. *See FairWarning IP*, 839 F.3d at 1097.

Aatrix's proposed second amended complaint supplies numerous allegations related to the inventive concepts present in the claimed form file technology. It describes the development of the patented invention, including the problems present in prior art computerized form file creation. J.A. 418–33. It then presents specific allegations directed to "improvements and problems solved by the Aatrix patented inventions." J.A. 454–57 (emphasis removed). As directed to the claimed data file, for example, the proposed second amended complaint alleges:

> The inventions claimed in the Aatrix Patents allow data to be imported into the viewable electronic form from outside applications. Prior art forms solutions allowed data to be extracted only from widely available databases with published database schemas, not the proprietary data structures of application software. The inventions of the Aatrix Patents allowed data to be imported from an end user application without needing to know proprietary database schemas and without having to custom program the form files to work with each outside application. The inventions of the Aatrix Patents permit data to be retrieved

> from a user application and inserted into a form, eliminating the need for hand typing in the values and eliminating the risk of transcription error.

J.A. 455 ¶ 109; *see also* J.A. 431–32 ¶¶ 43–46 (describing the development and success of the claimed data file despite the difficulty in obtaining data from other software vendors given proprietary data structures). These allegations about the claimed data file claim that the data file is directed to an improvement in importing data from third-party software applications.

The complaint also alleges that "[t]his invention increased the efficiencies of computers processing tax forms." J.A. 429 ¶ 39. The complaint alleges that the claimed invention "saved storage space both in the users' computers' RAM (Random Access Memory, which is fast, short-term storage used by running programs) and hard disk (permanent slower storage used for files and programs when not running)." J.A. 429 ¶ 38. The claimed invention, according to the complaint, reduces the risk of "thrashing," a condition which slowed down prior art systems. J.A. 429–30 ¶ 39. The complaint alleges that the claimed software uses less memory, results in faster processing speed, and reduces the risk of thrashing which makes the computer process forms more efficiently. J.A. 429 ¶ 39. These allegations suggest that the claimed invention is directed to an improvement in the computer technology itself and not directed to generic components performing conventional activities. We have repeatedly held that inventions which are directed to improvements in the functioning and operation of the computer are patent eligible. *See, e.g.*, *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258–59 (Fed. Cir. 2017); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300–02 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016); *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Viewed in favor of Aatrix, as the district court

must at the Rule 12(b)(6) stage, the complaint alleges that the claimed combination improves the functioning and operation of the computer itself. These allegations, if accepted as true, contradict the district court's conclusion that the claimed combination was conventional or routine. J.A. 26. Therefore, it was an abuse of discretion for the district court to deny leave to amend.

While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination. Relevant to this case, the second step of the *Alice*/*Mayo* test requires examining "the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 566 U.S. at 72, 79). If the elements involve "well-understood, routine, [and] conventional activity previously engaged in by researchers in the field," *Mayo*, 566 U.S. at 73, they do not constitute an "inventive concept." We have explained that the second step of the *Alice*/*Mayo* test is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347–48 (quoting *Alice*, 134 S. Ct. at 2359); *see also Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (holding that the features constituting the inventive concept in step two of *Alice*/*Mayo* "must be more than 'well-understood, routine, conventional activity'" (quoting *Mayo*, 566 U.S. at 79–80)); *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328 (Fed. Cir. 2017) (same); *BASCOM*, 827 F.3d at 1350 ("[I]t is of course now standard for a § 101 inquiry to consider whether various claim elements simply recite 'well-understood, routine, conventional activit[ies].'" (quoting *Alice*, 134 S. Ct. at 2359)). Whether the claim elements or the claimed combination are well-

understood, routine, conventional is a question of fact. And in this case, that question cannot be answered adversely to the patentee based on the sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice.

There are concrete allegations in the second amended complaint that individual elements and the claimed combination are not well-understood, routine, or conventional activity. There are also concrete allegations regarding the claimed combination's improvement to the functioning of the computer. We have been shown no proper basis for rejecting those allegations as a factual matter.

Below, even on the motion to dismiss, Aatrix argued the district court should have held claim construction proceedings to obtain a full understanding of the claims prior to granting Green Shades' motion to dismiss. It argued the claims are directed to specific structures defined in the claim language. On the other hand, Aatrix did not clearly explain which claim terms required construction or propose a construction of any particular term. We need not decide whether it was proper on that record for the court to grant the motion to dismiss without claim construction: the need for claim construction might be apparent just from the claim terms themselves, to arrive at "a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). We conclude that Aatrix is entitled to file its proposed second amended complaint, and that ruling makes it unnecessary to decide whether the district court erred by ruling on the § 101 motion prior to claim construction. The briefing and argument on appeal demonstrate a need for claim construction, to be conducted on remand after the amended complaint is filed.

On appeal, Aatrix argues, for example, that the claimed "data file" imports data from third-party applications into a viewable electronic form without programming each form file to work with each third-party application, which improves interoperability with third-party software. Aatrix cites the specification as support for its argument that the claimed data file contains an inventive concept directed to improved importation of data and interoperability with third-party software. It explains that through the data file, "data from the vendor application is seamlessly imported into the program" and the data file imports "only the data for a selected reporting period based on the guidelines programmed into the forms." '615 patent at 3:14–19; 10:59–67; *see also id.* at 12:21–24 ("By examining the data requirements for a form, the vendor application can determine what data it should supply in the AUF to correctly fill in as much of the form as possible."). The specification describes the structure of the data file, including the "forms index file" that "provides the vendor application with information on the forms available to the program." *Id.* at 9:46–60; *see id.* at 9:45–12:24. It explains that "allow[ing] data to be imported into the viewable electronic form from outside applications" is a "principal object and advantage of the present invention." *Id.* at 2:46–48; *see also id.* at 5:1–6 ("In its preferred embodiment, the main program 800 pulls information from the user's payroll or accounting application's export file, thus filling in 900 certain information on the form without the user having to type it in. With the export file, a lot of information that would normally have to be manually filled in is tagged for populating fields."). Green Shades argues that this purported improvement in importation of data is in fact a routine and conventional use of a computer, however, at oral argument, Green Shades conceded that nothing in the specification describes this importation of data as conventional. Oral Arg. at 34:34–35:53.

In assessing the claims under *Alice*/*Mayo* step two, the district court found that the claimed "data file containing data from a user application for populating the viewable form" describes "a 'well understood' and 'routine' component and function of a computer." J.A. 26. The district court supplied no reasoning or evidence for its finding that the claimed data file "describes a 'well understood' and 'routine' component and function of a computer," J.A. 26, nor is there any in the record at this stage of the proceedings.

At least since the proposal of the second amended complaint, and perhaps even before, allegations as to facts and the proper construction of the claims have precluded the court's conclusion that the claimed "data file" is "a 'well understood' and 'routine' component and function of a computer." J.A. 26. The "data file" limitation may reflect, as Aatrix argues, an improvement in the importation of data from third-party software applications. *Cf. Enfish*, 822 F.3d at 1337 ("Here, the claims are not simply directed to *any* form of storing tabular data, but instead are specifically directed to a *self-referential* table for a computer database."). In light of the allegations made by Aatrix, the district court could not conclude at the Rule 12(b)(6) stage that the claimed elements were well-understood, routine, or conventional. *Cf. Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016) (rejecting criticism of conclusion that the claims recited "routine and generic processing and storing capabilities of computers generally" where it was not suggested those elements were new or inventive); *Content Extraction*, 776 F.3d at 1347 (noting the concept of "data collection, recognition, and storage is *undisputedly* well-known" (emphasis added)). Thus, allowing Aatrix to file the proposed amended complaint would not have been futile.

We vacate the district court's dismissal pursuant to Rule 12(b)(6). There are factual allegations in the second

amended complaint, which when accepted as true, prevent dismissal pursuant to Rule 12(b)(6). Nothing in this opinion should be viewed as going beyond the Rule 12(b)(6) stage. Summary judgment, for example, involves different standards than Rule 12(b)(6). On remand, the district court should resolve, as necessary, claim construction issues.

CONCLUSION

For the foregoing reasons we vacate the district court's dismissal under Rule 12(b)(6) and reverse its denial of Aatrix's motion for leave to file a second amended complaint.

**REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED**

# United States Court of Appeals
# for the Federal Circuit

---

**AATRIX SOFTWARE, INC,**
*Plaintiff-Appellant*

**v.**

**GREEN SHADES SOFTWARE, INC,**
*Defendant-Appellee*

---

2017-1452

---

Appeal from the United States District Court for the Middle District of Florida in No. 3:15-cv-00164-HES-MCR, Senior Judge Harvey E. Schlesinger.

---

REYNA, *Circuit Judge*, concurring-in-part, dissenting-in-part.

I concur with the majority's decision to vacate and remand to the district court on the motion to dismiss. Like the majority, I find that the district court erred in its conclusion that Claim 1 of the '615 patent was directed to an abstract idea because the patent lacked a "tangible embodiment." I believe that the "tangible embodiment" requirement imposed by the district court also underlined its decision to deny Aatrix's motion for leave to file a

Second Amended Complaint.[1]  Therefore, I would vacate and remand on the motion for leave to file a Second Amended Complaint as well.  As a court, we should have decided on this issue alone.

I respectfully disagree with the majority's broad statements on the role of factual evidence in a § 101 inquiry.  Our precedent is clear that the § 101 inquiry is a legal question.  *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017).  In a manner contrary to that standard, the majority opinion attempts to shoehorn a significant factual component into the *Alice* § 101 analysis.  The problem here is twofold.

First, the majority opinion attempts to shift the character of the § 101 inquiry from a legal question to a predominately factual inquiry.  The risk of this approach is that it opens the door in both steps of the *Alice* inquiry for the introduction of an inexhaustible array of extrinsic evidence, such as prior art, publications, other patents, and expert opinion.[2]  Similarly, the majority opinion strongly suggests that the district court must require claim construction where the meaning of a claim term is placed in controversy, even where, as here, proposed claim constructions are not presented to the court.  Maj. Op. at 12–13.  One effect of this approach is that a plaintiff facing a 12(b)(6) motion may simply amend its complaint to allege extrinsic facts that, once alleged, must be taken as true, regardless of its consistency with the intrinsic record.  The majority asserts that its opinion is not intended to extend beyond the 12(b)(6) stage, but that is not the problem.  The problem is that the 12(b)(6) procedure is converted into a full blown factual inquiry on

---

[1]    For purposes of this dissent, "Second Amended Complaint" refers to the proposed Second Amended Complaint that was filed on April 26, 2016.

[2]    *See infra* note 3.

the level of § 102, § 103, and § 112 inquiries. Clearly, this approach would turn the utility of the 12(b)(6) procedure on its head, in particular in the context of § 101, which is primarily focused on the "allegations" in the patent—the claims and written description. That said, despite the majority's attempt to cabin its opinion to 12(b)(6), I see little to prevent argument that these notions extend also to summary judgment proceedings.

Second, the posture of the case on appeal does not support the majority opinion. The motion to dismiss on appeal only challenges the First Amended Complaint. There was no motion to dismiss filed challenging the Second Amended Complaint. Therefore, the "new" allegations and evidence[3] discussed by the majority were not

---

[3]    Aatrix's new allegations in the Second Amended Complaint included: the background and development of the inventions of the Aatrix Patents; specific allegations and diagrams spelling out the technology of the Aatrix Patents; the prosecution history of the patents with the relevant USPTO file wrappers attached as exhibits; a large number of prior art and patentably distinct means and methods of creating, displaying and filling out forms on computers, such as Aatrix's own "monolithic software;" hundreds of search results by the USPTO disclosing prior art in the field; eleven patents or publications disclosing prior art and/or patentably distinct means and methods cited by the USPTO in the prosecution of the applications for the Aatrix's patents; several products for creating, designing and filling out forms, allegedly distinct from Aatrix's patents, on sale before the date of invention; alternate methods for creating, displaying and filling out forms such as Superforms and the use of SDK's to launch monolithic software; and the allegedly many improvements, objectives and advantages over the prior art that the inventions of Aatrix's patents provide, including

raised before the district court. Thus, the part of the majority opinion devoted to the Second Amended Complaint is dicta. As an appellate court, we should not pass judgment on matters not addressed by the district court. Here, we must first give the district court the opportunity to perform a § 101 analysis in light of this new complaint, which we can later review, if at all. *See Singleton v. Wulff*, 428 US 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). Nor should we prejudge whether the Second Amended Complaint survives a Rule 12(b)(6) motion to dismiss in the first instance, particularly when the defendant, Greenshades, has had no opportunity to present arguments with respect to the new pleading.

The majority attempts to expand this court's law regarding patent eligibility under § 101 at the Rule 12(b)(6) stage. This contradicts our case law that patent ineligibility under § 101 is a question of law, and that it can be appropriately decided on a motion to dismiss. *See, e.g., Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) ("[T]his court has determined claims to be patent-ineligible at the motion to dismiss stage based on intrinsic evidence from the specification without need for 'extraneous fact finding outside the record.'").

For these reasons, I respectfully concur-in-part and dissent-in-part from the majority opinion.

---

improvements in the functioning of the computer components of the inventions. J.A. 407–09.